**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**RAQUEL ESTRADA,**

**Plaintiff,**

**v.** **Case No. 25-CV-987**

**FRANK BISIGNANO,**
***Commissioner of Social Security*,**

**Defendant.**

---

# DECISION AND ORDER

---

## 1. Introduction

Plaintiff Raquel Estrada seeks disability insurance benefits, alleging that she has been disabled since June 6, 2021 (Tr. 16). Estrada's date last insured was March 31, 2022. After the Social Security Administration denied her application initially and upon reconsideration (Tr. 63-81), Administrative Law Judge (ALJ) Arman Rouf held a hearing on May 22, 2024 (Tr. 33). On July 18, 2024, the ALJ issued a written decision concluding that Estrada was not disabled. (Tr. 13-27.) The Appeals Council denied Estrada's request for review on May 13, 2025. (Tr. 1-7.) Estrada filed this action.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one the ALJ

determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Estrada did not engage in substantial gainful activity from her alleged onset date of June 6, 2021, through her date last insured of March 31, 2022. (Tr. 18.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Estrada has the following severe impairments: history of scoliosis, status post thoracolumbar spine fusion; fibromyalgia; obesity; bilateral carpal tunnel syndrome; type 2 diabetes mellitus; and depressive order. (Tr. 18.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that Estrada's impairments did not meet or medically equal a listing impairment. (Tr. 19.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite her impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that, through her date last insured, Estrada:

> had the RFC to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; frequently handle, finger, and feel with her bilateral upper extremities; frequently push, pull, or operate foot controls with her bilateral lower extremities; must avoid unprotected heights and dangerous moving machinery; can tolerate occasional exposure to vibration; and must avoid exposure to extreme cold. She can understand, remember, and carry out simple instructions and maintain attention, concentration, persistence, and pace for two-hour segments.

(Tr. 21.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of Estrada's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. The ALJ concluded that Estrada has no past relevant work. (Tr. 26.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering Estrada's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded that there were jobs that Estrada could

perform including marker (Dictionary of Occupational Titles (DOT) Number 209.587-034), router (DOT Number 222.587-038), and packager (DOT Number 559.687-074). (Tr. 27.) Therefore, Estrada was not disabled. *Id.*

**3. Standard of Review**

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

**4. Analysis**

Estrada challenges three aspects of the ALJ's decision. First, she argues that the ALJ failed to account for her moderate limitation in concentration, persistence, and pace when determining her RFC. Second, she argues that the ALJ failed to

account for her fatigue when determining her RFC. Third, she argues that the ALJ improperly assessed the intensity and persistence of her pain in his subjective symptom analysis.

### 4.1. Concentration, Persistence, and Pace

An ALJ's residual functional capacity determination must incorporate all of a claimant's limitations that are supported by the record, including limitations in concentration, persistence, or pace (often called CPP limitations). *Moy v. Bisignano*, 142 F.4th 546, 553 (7th Cir. 2025). And the ALJ must build an accurate and logical bridge from the evidence in the record to his RFC determination. *Id.* at 552.

The ALJ concluded that Estrada was moderately limited in her ability to concentrate, persist, or maintain pace because of her depressed mood and ongoing pain. (Tr. 21.) Then, in his RFC determination, the ALJ concluded that Estrada "can understand, remember, and carry out simple instructions and maintain attention, concentration, persistence, and pace for two-hour segments." (Tr. 21-22.)

Estrada argues that the ALJ's RFC assessment does not sufficiently account for her moderate CPP limitation. (ECF No. 11 at 6-7.) According to Estrada, limiting her to two-hour segments of concentration, persistence, and pace is no limitation at all, because all jobs require employees to maintain attention and concentration for at least two-hour segments. *Id.* at 7. Since "an unimpaired worker would be expected to work in two-hour intervals," she argues, the ALJ's finding that Estrada can maintain attention, concentration, persistence, and pace for two-hour segments contradicts his conclusion that she is moderately limited in this area. Rather, Estrada asserts that

because of her limitation she requires "additional breaks beyond what would be required of a worker with no deficits in concentration, persistence or pace" as well as "a reduced work pace." *Id*. at 7-8.

In the Commissioner's view, Estrada misreads the ALJ's decision. The ALJ did not intend to accommodate Estrada's moderate CPP limitation by finding that Estrada can work in two-hour segments. Rather, the Commissioner argues, the ALJ sufficiently accounted for this limitation by restricting Estrada to carrying out simple instructions. (ECF No. 21 at 3.) The two-hour segment language was included merely to verify that Estrada could carry out simple instructions for two hours at a time. *Id*.

Contrary to the Commissioner's argument, a restriction to carrying out simple instructions is not enough, on its own, to account for a moderate CPP limitation. *See e.g. Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[O]bserving that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis…"). To account for a CPP limitation, the ALJ must not only address what kind of work a claimant can do, but also whether, and to what extent, the claimant can sustain that work. *Keck v. O'Malley*, No. 22-1716, 2024 U.S. App. LEXIS 21525, *7 (7th Cir. Aug. 26, 2024) (collecting cases).

Here, the ALJ did address Estrada's ability to sustain concentration in his RFC determination. In addition to restricting Estrada to carrying out simple instructions, he also restricted her to "maintain[ing] attention, concentration, persistence, and pace for two-hour segments." (Tr. 21-22.) Estrada is incorrect that this two-hour segment limitation is necessarily inconsistent with her moderate CPP limitation. It

is true that the Social Security Administration's Program Operations Manual System (POMS) states that all jobs have a minimum requirement of maintaining attention and concentration for approximately two-hour segments. POMS DI 25020.010(B)(2)(a). But it does not logically follow that every person with a moderate CPP limitation is unable to concentrate for two-hour segments. "Non-impaired workers can sustain focus for *at least* two hours, whereas the RFC limits [Estrada's] sustained attention to two hours at a time." *Delong v. Saul*, 844 Fed. Appx. 894, 900 (7th Cir. 2021). There is no reason that "a concentration limitation cannot be the same as the minimum expectation for unskilled work." *Streikus v. O'Malley*, No. 22-2484, 2024 U.S. App. LEXIS 5534, *14 (7th Cir. Mar. 7, 2024). If that were the case, then a moderate limitation in concentration, persistence, and pace would automatically lead to a finding of disability, which is not correct. *Moy*, 142 F.4th at 555 ("[P]eople with 'moderate' limitations may or may not qualify as disabled—a question that will be assessed in the residual functional capacity determination.") (quoting Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66146-47 (Sep. 26, 2016)).

The problem in this case is not that these limitations are inherently inappropriate for *every* claimant with a moderate CPP limitation. In fact, the Seventh Circuit held in at least one case that limitations like these were sufficient. *Pufahl v. Bisignano*, 142 F.4th 446, 460 (7th Cir. 2025) (holding that a restriction to "simple, repetitive tasks" was adequate where it also limited the claimant to maintaining attention and concentration for two-hour segments). The problem here is that the

ALJ failed to explain why these restrictions were appropriate for *this* claimant. The ALJ did not explain what led to his conclusion that Estrada could maintain attention, concentration, and pace for two-hour segments. Nor did the ALJ explain how this restriction accounts for Estrada's moderate CPP limitation. Furthermore, the ALJ failed to point to any evidence in the record supporting this conclusion. Consequently, the ALJ failed to provide a logical bridge between the evidence in the record and his RFC determination. *Radosevich v. Kijakazi*, No. 22-cv-763, 2023 U.S. Dist. LEXIS 56100, at *13 (E.D. Wis. Mar. 31, 2023) (holding that an ALJ failed to provide a logical bridge where he failed to explain, or cite to evidence supporting, how a restriction to simple tasks requiring no more than two hours of continuous concentration accounted for the claimant's moderate CPP limitation).

Remand is necessary so the ALJ can explain how the RFC restrictions account for Estrada's moderate CPP limitation.

### 4.2. Fatigue

Estrada argues that the ALJ failed to assess how her fatigue impacts her RFC. (ECF No. 11 at 9.) Estrada points out that reports of her fatigue appear several times in the record. *Id*. at 9-10. The ALJ cited two mentions of Estrada's fatigue in his decision, but Estrada contends that these mentions were "only in passing" and that the ALJ "said nothing as to how this fatigue was weighed in evaluating her RFC." *Id*. at 10.

In response, the Commissioner does not point to any discussion of Estrada's fatigue in the ALJ's decision. Instead, the Commissioner contends that the ALJ

adequately addressed Estrada's allegations of fatigue, because the ALJ concluded, generally, that Estrada's statements about her symptoms are inconsistent with the record, and there is no other evidence of fatigue that the ALJ overlooked. (ECF No. 21, at 15-17.)

"Although an ALJ generally need not recount every piece of evidence, he may not simply ignore significant evidence of a claimant's fatigue." *Ninedorf v. O'Malley*, No. 23-cv-998, 2024 U.S. Dist. LEXIS 108833, at *6 (E.D. Wis. June 20, 2024) (citing *Sherman v. O'Malley*, No. 23-1428, 2023 U.S. App. LEXIS 34044, at *7 (7th Cir. Dec. 22, 2023)). As Estrada points out, she reported to her doctors several times that she was suffering from fatigue. She described low energy, poor sleep, and the need to take naps during the day. (Tr. 276, 650, 661, 690, 747, 751.) Given this evidence, "[t]he ALJ was required to fulsomely discuss the claimant's fatigue and how it might affect her job performance." *Ninedorf*, 2024 U.S. Dist. LEXIS 108833, at *6 (citation modified). The ALJ did acknowledge two such reports in his decision, (Tr. 23-24), but the ALJ never explained whether, or how, he accounted for Estrada's fatigue in his RFC determination.

The Commissioner suggests that the ALJ did not account for Estrada's fatigue when determining her RFC because he found that Estrada's "statements about the intensity, persistence, and limiting effects of his or her symptoms" are "inconsistent." (Tr. 25.) But the court can only consider the reasons that the ALJ articulated in his decision, not those provided by the Commissioner post-hoc. *E.g. Steadman v. Saul*, 2021 U.S. Dist. LEXIS 53169, at *8 (E.D. Wis. Mar. 22, 2021). And the ALJ never

said that he did not accommodate Estrada's fatigue in his RFC because he wholly discounted her statements about it, so the court cannot consider this rationale.

To be sure, an ALJ may not always be required to "explicitly link a claimant's RFC with each symptom to be addressed" if the RFC obviously addresses a particular symptom. *Marilyn G. v. O'Malley*, No. 22-cv-5373, 2024 U.S. Dist. LEXIS 33275, at *6 (N.D. Ill. Feb. 27, 2024). But here, none of the RFC limitations obviously address fatigue. Accordingly, the ALJ was required to explain how he accounted for Estrada's fatigue in his RFC determination. *Saucier v. Kijakazi*, No. 21-cv-1441, 2022 U.S. Dist. LEXIS 158837, at *26 (E.D. Wis. Sep. 2, 2022). Alternatively, if the ALJ did not account for it because he did not credit the evidence of fatigue, he was required to say so and to explain why. *Id*. The ALJ did neither; consequently, the ALJ failed to build a logical bridge between the evidence and his RFC determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Remand is necessary so the ALJ can explain how he accounted for Estrada's fatigue in determining her RFC.

### 4.3. Subjective Symptom Analysis

When evaluating an individual's symptoms, the ALJ must follow a two-step process. At step one, the ALJ must determine if the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. SSR 16-3p, 82 Fed. Reg. 49462 (Oct. 25, 2017). At step two, the ALJ must evaluate the intensity and persistence of the individual's symptoms and determine the extent to which an individual's symptoms limit their

ability to work. *Id*. at 49464. In doing so, the ALJ must consider the objective medical evidence; the individual's subjective statements; information provided by medical sources; and the claimant's level of pain, medication, treatment, and daily activities. *Id*. at 49464-66. Review of an ALJ's subjective symptom analysis is deferential. Courts will only overturn an ALJ's evaluation of a claimant's subjective symptoms if it is "patently wrong, which means that the decision lacks any explanation or support." *Pufahl*, 142 F.4th at 458.

Estrada argues that the ALJ violated SSR 16-3p when evaluating the intensity and persistence of Estrada's pain. (ECF No. 11 at 11-12.) Estrada points to two alleged errors in the ALJ's evaluation. First, she contends that the ALJ improperly relied on his determination that there were only "mild physical findings" in the record in discounting Estrada's own statements about her pain from fibromyalgia and carpal tunnel syndrome. *Id*. at 13-14. Second, she argues that the ALJ erred by failing to consider her daily activities as evidence. *Id*. at 14-15.

Estrada correctly points out that an ALJ cannot disregard an individual's statements about the intensity and persistence of their symptoms *solely* because the objective medical evidence does not substantiate those symptoms. (ECF No. 11 at 12 (citing SSR 16-3p, 82 Fed. Reg. 49462 at 49465, 2016 SSR LEXIS 4 (Oct. 25, 2017)).) Additionally, the Social Security Administration has recognized that subjective evidence is important in assessing symptoms stemming from fibromyalgia. *Hohman v. Kijakazi*, 72 F.4th 248, 252 (7th Cir. 2023) (citing SSR 12-2p, 77 Fed. Reg. 43640, 2012 SSR LEXIS 1). But SSR 12-2p does not limit the evidence that an ALJ can

consider in evaluating the severity of fibromyalgia symptoms. *Gebauer v. Saul*, 801 Fed. Appx. 404, 410 (7th Cir. 2020). Nor does it render objective medical evidence irrelevant in fibromyalgia cases. *Swiecichowski v. Dudek*, 133 F.4th 751, 758 (7th Cir. 2025). For instance, physical examinations can help an ALJ determine how a claimant's fibromyalgia symptoms limit their ability to work by revealing the claimant's ability to walk, move, or otherwise function physically. *Id*. at 758. In fact, ALJs are required to consider the objective medical evidence. *Padua v. Bisignano*, 145 F.4th 784, 790 (7th Cir. 2025) (citing 42 U.S.C. § 423(d)(4)(A); 20 C.F.R. § 404.1529(c)(2)). So, even though a claimant's positive physical examination results may not, on their own, constitute substantial evidence that fibromyalgia is not disabling, *Jennifer S. v. Bisignano*, No. 24-cv-1068, 2025 U.S. Dist. LEXIS 170040, *8-9 (E.D. Wis. Sep. 2, 2025), an ALJ can permissibly rely on such results in combination with other evidence.

It was not error for the ALJ to rely on the objective medical evidence in the record as one factor when evaluating Estrada's symptoms. As Estrada points out, the ALJ did rely on his determination that "the record document[ed] only mild physical findings" when concluding that Estrada's statements about her symptoms, including her symptoms related to fibromyalgia, were inconsistent with all the evidence. (Tr. 25.) However, the ALJ did not rely *solely* on this conclusion about the objective medical evidence. Rather, the ALJ also relied on his conclusion that Estrada "received only conservative treatment." (Tr. 25.) A claimant's treatment history is one of the

factors that an ALJ can consider when evaluating a claimant's symptoms. *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (citing 20 C.F.R. § 404.1529(c)(3)(v)).

Additionally, the ALJ relied on Estrada's failure to pursue physical therapy—despite being referred multiple times—until eight months after her date last insured. *Id*. This was also an appropriate consideration. *See e.g. Wood v. Kijakazi*, No. 22-cv-627, 2023 U.S. Dist. LEXIS 14956, *22 (E.D. Wis. Jan. 30, 2023) (noting that an ALJ "can consider a claimant's noncompliance with or failure to seek treatment in evaluating the credibility of the claimant's symptom allegations"). And the ALJ properly considered whether Estrada's failure to pursue physical therapy was due to an inability to access care. *E.g. Amaris S. v. O'Malley*, No. 24-cv-69, 2024 U.S. Dist. LEXIS 196083, *28-29 (E.D. Wis. Oct. 29, 2024) ("[A]n ALJ must not draw any inferences about a claimant's condition from the claimant's failure to pursue further medical treatment unless the ALJ explored the claimant's explanations for her lack of medical care."). The ALJ rejected that possibility because Estrada was already seeking care from several other providers at the time. (Tr. 25.) Estrada does not challenge this conclusion, nor does she offer any other reason for her failure to pursue the recommended physical therapy.

Furthermore, the ALJ did not fail to consider Estrada's activities of daily living. As Estrada acknowledges, the ALJ discussed some reports of Estrada's daily activities in his decision, observing that she reported that she needs help getting out of the bathtub; needs help lifting and carrying objects; and can only walk one block before needing to rest; but that she can vacuum, wash dishes, make the bed, and do

laundry. (Tr. 22.) It is true that the ALJ did not mention Estrada's daily activities at the precise point of his decision where he concluded that Estrada's statements are inconsistent with her reported symptoms, but there is no requirement that he do so. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("An ALJ need not rehash every detail each time he states conclusions on various subjects."). The ALJ discussed Estrada's daily activities earlier in his decision and "was aware of them when he considered her physical symptoms." *Id*. And in any event "an ALJ is not required to discuss every regulatory factor in his decision." *Cynthia Q. v. O'Malley*, 2024 U.S. Dist. LEXIS 17774, *9 (N.D. Ill. Feb. 1, 2024) (holding that an ALJ's failure to discuss a claimant's daily activities was not an error).

When evaluating Estrada's subjective symptoms, the ALJ properly relied on the objective medical evidence in combination with Estrada's conservative treatment history and failure to pursue physical therapy in concluding that her statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the evidence in the record, and the ALJ did not fail to consider Estrada's daily activities.

**5. Conclusion**

The ALJ failed to adequately explain how he incorporated Estrada's moderate limitation in concentration, persistence, and pace and her fatigue into his residual functional capacity assessment. Consequently, the ALJ failed to build a logical bridge between the evidence and his conclusions sufficient to enable judicial review. For those reasons, the court must remand this matter to the ALJ. However, it was not an

error for the ALJ to rely on the objective medical evidence in combination with other factors in his subjective symptom analysis, and he did not fail to consider Estrada's daily activities.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Green Bay, Wisconsin this 5th day of August, 2026.

*s/ Byron B. Conway*
BYRON B. CONWAY
United States District Judge